IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SALVADOR SANTANA CABRERA,      )
                               )
          Petitioner,          )
                               )        1:12CV667
     v.                        )        1:09CR122-1
                               )
UNTIED STATES OF AMERICA,      )
                               )
          Respondent.          )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, Jr., District Judge**

On July 5, 2012, Petitioner Salvador Santana Cabrera, a
federal prisoner, filed a motion, and a supporting memorandum,
seeking to vacate, set aside, or correct his sentence pursuant
to 28 U.S.C. § 2255.[1] (Docs. 32, 33.) The Government has filed an
Amended Response (Doc. 47), and Petitioner has filed a Reply
(Doc. 51).  Petitioner has also filed a Motion for Default

---

[1] Unless otherwise noted, citations herein are to the
instant criminal proceeding, Case No. 1:09CR122-1.  Moreover,
Petitioner's claims often overlap one another considerably.  The
court has endeavored to separate Petitioner's claims in an
orderly fashion for ease of reference.  In any event, the court
is fully aware of all of Petitioner's arguments and has
concluded that they all lack merit in that they all fail to
satisfy one or more prongs of the Strickland analysis.

Judgment[2] (Doc. 49).  The matter is now before the court for a

ruling.  <u>See</u> Rule 8, Rules Governing § 2255 Proceedings.

<u>**BACKGROUND**</u>

On March 31, 2009, Petitioner was indicted by a grand jury

in the Middle District of North Carolina and charged in Count

One with possession with intent to distribute cocaine, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Doc. 1.) In

a second count, Petitioner was charged with possession of a

firearm in furtherance of a drug trafficking crime, in violation

of 18 U.S.C. § 924(c)(1)(A)(i).  (<u>Id.</u>)  On May 6, 2009,

Petitioner pled guilty to both counts pursuant to a written plea

agreement.  (5/06/09 Minute Entry; Plea Agreement (Doc. 8).)

Under the terms of the plea agreement, Petitioner agreed to

enter a voluntary plea of guilty to both counts and stipulated

that the substance involved was 500 grams or more of a mixture

and substance containing a detectable amount of cocaine

hydrochloride. (Plea Agreement (Doc. 8) at 1, 4.) In return, the

Government agreed to recommend Petitioner for a reduction in his

---

[2] Petitioner seeks the entry of "default judgment" in his
favor, contending that the Government has failed to timely file
a response.  This is incorrect.  The Government's Response (Doc.
42) was deemed timely filed by prior Order (Doc. 45.)  The court
later permitted the Government to file an amended response,
which it did.  (Docs. 47, 48.)  Accordingly, the court will deny
Petitioner's request for the entry of default judgment.

offense level pursuant to U.S.S.G. § 3E1.1(b).  (<u>Id.</u> at 4.)  The

plea agreement also indicated that no other agreements,

representations, or understandings had been made between the

parties, and none would be entered into unless executed in

writing.  (<u>Id.</u> at 5.)

Following the plea, but prior to sentencing, Petitioner

requested new counsel and on April 29, 2010, this court allowed

Petitioner's counsel, James Green ("Green"), to withdraw.

(4/29/10 Minute Entry.)  George Crump ("Crump"), who had

previously been appointed to represent Petitioner in a separate

case (Case No. 1:09CR323-1), was appointed to represent

Petitioner in this proceeding as well.  (<u>Id.</u>)  On May 18, 2010,

the court sentenced Petitioner to 87 months on Count One

(possession with intent to distribute cocaine) and 60 months on

Count Two (possession of a firearm in furtherance of a drug

trafficking crime) to run consecutively to Count One. (5/28/10

Minute Entry; Doc. 22.)[3]  On June 9, 2010, Petitioner appealed.

(Doc. 18.)  On March 18, 2011, the United States Court of

Appeals for the Fourth Circuit affirmed Petitioner's sentence.

See United States v. Cabrera, 418 Fed. App'x 160 (4th Cir.

2011).  On May 10, 2011, pursuant to a motion from the

Government, Petitioner's sentence was reduced considerably.

(Docs. 30, 31.)  Petitioner subsequently filed his section 2255

motion.[4]

## Petitioner's Claims

Petitioner raises four claims in his section 2255 motion.

First, in Ground One, Petitioner contends that his plea counsel,

Green, (1) failed to secure an enforceable promise for a

---

[3] At the same time, the court also sentenced Petitioner in a separate and unrelated case (Case No. 1:09CR323-1), involving misuse of a social security number and aggravated identity theft. (Case No. 1:09CR122-1, Doc. 22.) Specifically, Petitioner was sentenced to serve 87 months for his possession with intent to distribute cocaine, consecutive to a 60-month sentence for possession of a firearm in furtherance of a drug trafficking crime, and consecutive to 24 months of imprisonment for aggravated identity theft in the unrelated case. (Id.) Petitioner was also sentenced to serve 60 months for misusing a social security card as part of the unrelated case, however, this was to be served concurrently with the possession with intent to distribute cocaine charge in this matter. (Id.) Consequently, Petitioner was sentenced to a total term of 171 months of imprisonment. (Id.)

[4] Petitioner has also filed a section 2255 motion in case number 1:09CR323-1 (Doc. 54), which the court will address in a separate order.

- 4 -

sentence reduction, and (2) failed to secure anything of value in exchange for Petitioner's plea of guilty and for providing assistance that led to agents relocating his family. (Motion to Vacate (Doc. 32) at 4.)[5] Second, in Ground Two, Petitioner alleges that Green advised him to acknowledge in the plea agreement, and to agree at the plea hearing, that no promises beyond those made in the plea agreement had been made to him, despite there being enforceable promises that Petitioner would get credit for his cooperation. (Id. at 5.)

In Ground Three, Petitioner alleges that Green failed to conduct adequate investigation before advising Petitioner to debrief and that Petitioner consequently made unnecessary admissions at debriefing that increased his sentence. (Id. at 7.) Petitioner also alleges that Green failed to prepare Petitioner for debriefing and then failed to attend the same. (Id.) Petitioner further contends that "counsel had inadequate knowledge of the scope of and facts surrounding the charged crimes. Counsel advised [Petitioner] to volunteer information about prior unrelated crimes. Such advice carried no benefit to

---

[5] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[Petitioner], yet increased his sentence." (Id.) In Ground

Four, Petitioner alleges that his counsel at sentencing, Crump,

was ineffective for not objecting to an easily disproven fact

that ultimately resulted in the court denying a downward

variance. (Id. at 8.) As explained below, these claims lack

merit, Petitioner's section 2555 motion will be denied, and this

action will be dismissed.

## DISCUSSION

Each of Petitioner's claims is based on alleged ineffective

assistance of counsel at various stages of the proceedings. (See

Motion to Vacate (Doc. 32) Grounds One through Four.) In order

to prove ineffective assistance of counsel, a petitioner must

establish, first, that his attorney's performance fell below a

reasonable standard for defense attorneys and, second, that he

was prejudiced by this performance. See Strickland v.

Washington, 466 U.S. 668, 688, 691-92 (1984). A petitioner

bears the burden of affirmatively showing deficient performance.

See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To

establish prejudice, a petitioner must show that there is a

reasonable probability that but for counsel's unprofessional

errors, the result of the proceeding would have been different.

Strickland, 466 U.S. at 694. To show prejudice following a

guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would have not pled guilty but would have gone to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)).  This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

### Grounds One and Two

Grounds One and Two are related to Petitioner's claim that he had an enforceable agreement that his cooperation would be credited at sentencing.  These allegations implicate the performance of both Petitioner's plea counsel as well as his sentencing counsel and the court will consider each in turn.

### A.   Plea Counsel (Green)

As noted, Petitioner asserts that his plea counsel, Green, was constitutionally ineffective.  More specifically, Petitioner alleges that he assisted law enforcement from the day of his arrest. (Motion to Vacate (Doc. 32) at 4.)  Petitioner alleges

he was debriefed initially and again later, this time by "Federal Agent Kinghorn," on March 30, 2009. (Id. at 13.) Following this later debriefing, Petitioner alleges "Agent Kinghorn assured [Petitioner] that he believed the information that [Petitioner] provided," "that the information was valuable," "that the information was at least in part previously unknown by law enforcement; and, Agent Kinghorn promised [Petitioner] that he would receive a sentence reduction in exchange for [Petitioner's] assistance." (Id.; Petitioner's Mem. of Law ("Petitioner's Mem.") (Doc. 33) at 3.) Following these representations, Petitioner alleges Green failed to have those promises reflected in the plea agreement and did not advise the court of the promises during the Rule 11 colloquy. (Motion to Vacate (Doc. 32) at 13-15.)

Ultimately, Petitioner continues, "Green [did not make] any efforts to ensure that [Petitioner] receive[d] such credit (for which [he] was contractually entitled), including no effort to contact the agents or to ask the prosecutor to confirm [Petitioner's] assistance." (Id. at 15.) Petitioner also faults Green in Ground One for "fail[ing] to get anything of value in exchange for [Petitioner's] plea of guilty and for providing assistance that led agents to relocating his family." (Id. at

4.)  Despite Petitioner's allegations, these claims fail for the following reasons.

### i.    Petitioner fails to assert the existence of an enforceable promise.

First, Petitioner's description of the statements made by Agent Kinghorn does not establish an agreement between the Government and Petitioner that should have been included in the plea agreement.  Petitioner's claim that Agent Kinghorn said he "believed" Petitioner, that "the information was valuable," or that he would receive a reduction at sentencing all fall far short of an agreement to move for a sentence reduction pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1.  Such a reduction requires a "motion of the Government," 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1, and Petitioner has made no showing that the information provided rose to the level of substantial assistance requiring a motion or an agreement by the Government.  Petitioner's conclusory statement, that Green failed to inform the court that Petitioner had provided substantial assistance, does not suggest Green was ineffective.  As detailed further below, the Government was aware of Petitioner's statements, acknowledged his cooperation at sentencing, but did not file a motion requesting a substantial assistance departure.  Petitioner has not presented any evidence suggesting that a

motion pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1 was improperly withheld.  Agent Kinghorn's statements fall far short of creating an issue as to whether Petitioner provided substantial assistance.  Agent Kinghorn's purported statements also fall far short of establishing an agreement with the Government that should have been negotiated on behalf of Petitioner by his counsel.[6]

This is because Government has the power, but not the duty, to file a motion for a sentence reduction when a defendant substantially assists it.[7] Wade v. United States, 504 U.S. 181, 185–87 (1992).  Because the Government is under no obligation to file any such motion, even if the defendant renders substantial assistance, courts generally lack authority to review the Government's decision not to file.  Id. at 186.  Review is only authorized (1) if the Government obligated itself in the plea agreement to file a motion; (2) if the decision not to file a motion is based on an unconstitutional motive; or (3) "if the

---

[6] For all the reasons set forth herein, any argument that Petitioner may be making that he was entitled to a Rule 35 motion on this particular issue also fails.

[7] Given that the power to move for a reduction in sentence resulting from a defendant's cooperation resides with the Government, Petitioner's claim that counsel was ineffective for failing to force the Government into such an arrangement must fail.  (Doc. 51 at 4-5.)  Also, any argument that counsel could have secured such an arrangement is entirely speculative.

prosecutor's refusal to move was not rationally related to any legitimate government end." Id. at 185–87; United States v. LeRose, 219 F.3d 335, 342 (4th Cir. 2000); United States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994).

Generalized allegations of an improper motive do not entitle a defendant to review the Government's decision not to file a motion. Wade, 504 U.S. at 186. "Neither a claim that a defendant merely provided substantial assistance nor additional but generalized allegations of improper motive will [justify] . . . a remedy[,] . . . discovery or an evidentiary hearing. A defendant has a right to the latter procedures only if he makes a substantial threshold showing of improper motive." Id. Here, Petitioner has failed to assert, much less demonstrate at all, any meaningful rationale that would permit further inquiry into the Government's motivation for not seeking any additional[8] reduction in Petitioner's sentence.

The Government also ultimately agreed that a sentence at the low-end of the guidelines range was appropriate because of

---

[8] Petitioner ultimately did receive a sentence reduction, though he asserts it was for reasons unrelated to the debriefings addressed herein. (Petitioner's Mem. (Doc. 33) at 1.) Pursuant to a motion filed by the Government, Petitioner's sentence was reduced prior to the filing of the instant Motion. (Docs. 30, 31.)

Petitioner's cooperation and a sentence at the low-end of the guidelines was imposed. (Tr. of Sentencing (Doc. 25) at 25, 29.) As a result, Petitioner received some credit from the Government for his debriefing.  Thus, based upon Petitioner's description of Agent Kinghorn's statements, he received the benefit of any promise as he received credit at sentencing for his truthful statement.  Any alleged error by counsel in failing to include an agreement in the plea agreement was at most harmless.

### ii. Petitioner's claims contradict the sworn statements he made at his Rule 11 hearing.

Second, the assertions Petitioner now advances directly contradict the sworn statements he made at his change of plea hearing.  Where, as here, "a defendant is represented by counsel when making [a] guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. . . . [T]o rebut that strong presumption of validity, the defendant must make a factual showing that [a] plea of guilt was not voluntary and intelligent." United States v. Custis, 988 F.2d 1355, 1363 (4th Cir. 1993) (citations omitted).  "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea." United States v. Wilson, 81 F.3d 1300, 1308 (4th

Cir. 1996) (internal quotation marks and citations omitted).
Absent "extraordinary circumstances, the truth of sworn
statements made during a Rule 11 colloquy is conclusively
established, and a district court should, without holding an
evidentiary hearing, dismiss any § 2255 motion that necessarily
relies on allegations that contradict the sworn statements."
United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Here, Petitioner's Rule 11 colloquy is a formidable barrier
to a claim that his guilty plea was not made knowingly and
voluntarily. At Petitioner's Rule 11 hearing, he was placed
under oath and responded as follows:

> THE COURT: [Y]ou are now under oath; and because
> you are under oath, if you answer any of my questions
> falsely, your answers may later be used against you in
> a separate prosecution for perjury or making false
> statements. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

(Tr. of Change of Plea (Doc. 24) at 3.)

This court then asked Petitioner if any threats or promises
had been made to him:

> THE COURT: Has anyone made any threats or
> promises to you other than those contained in the plea
> agreement in an effort to get you to plead guilty?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Has anyone in any way attempted to
> force you to plead guilty against your wishes?

- 13 -

THE DEFENDANT: No, Your Honor.

(Id. at 9.)

        This court also reviewed the Plea Agreement with

Petitioner:

        THE COURT: And have you had sufficient
        opportunity to read the plea agreement and discuss it
        with Mr. Green?

        THE DEFENDANT: Yes, Your Honor.

        THE COURT: And do you understand all of the terms
        of the plea agreement?

        THE DEFENDANT: Yes, Your Honor.

        THE COURT: Does that plea agreement represent the
        entire agreement between you and the United States?

        THE DEFENDANT: Yes, Your Honor.

(Id. at 7.)  Petitioner also indicated that he was pleading

guilty because he was indeed guilty.  (Id. at 18.)  The court

ultimately accepted Petitioner's plea of guilty, stating that

Petitioner "is fully competent and capable of entering an

informed plea" and "is aware of the nature of the changes and

the consequences of his plea, and his guilty plea is a knowing

and voluntary plea."  (Id. at 18-19.)

        Consequently, Petitioner's contentions that he pled guilty

in light of promises from either the Government or from Green

for a reduced sentence as the result of his cooperation, or that

Green told Petitioner not to mention enforceable unwritten promises from the Government, are contradicted by statements he made under oath at his Rule 11 hearing.  At his Rule 11 hearing, while under oath and subject to separate prosecution for perjury if he were to make a false statement, Petitioner asserted that there were no promises other than those set forth in the plea agreement that were inducing him to plead guilty.  He stated further that the plea agreement contained the entire agreement between he and the Government.

As set out previously, Petitioner faces the "formidable barrier" of his sworn statements made during the plea colloquy, which he can only overcome by demonstrating "extraordinary circumstances."  His allegations in this case do not qualify as such extraordinary circumstances.  Rather, they are the type of run of the mill allegations made frequently by petitioners seeking to challenge their guilty pleas.  Petitioner is bound by his statements during the plea colloquy, has failed to demonstrate any likelihood of an enforceable promise for a

reduction of sentence, and his ineffective assistance claims should be denied in their entirety.[9]

### iii. Petitioner's claim that Green's representation failed to benefit him is belied by the record.

Third, Petitioner's more general claim that Green failed to secure anything of value for Petitioner in exchange for pleading guilty must also fail.  In return for his guilty plea (Plea Agreement (Doc. 8) at 4), Petitioner received a reduction in his sentencing guideline calculation, which the Government recommended at sentencing. (Tr. of Sentencing (Doc. 25) at 7-8.) Absent a three-point reduction in his offense level, Petitioner's guideline range in this case would have been 121 to 151 months (Offense Level 32, Criminal History Category I) rather than the 87 to 108 months (Offense Level 29, Criminal History Category I) determined at sentencing.  (Id. at 9-10.) See U.S.S.G. Ch. 5, Pt. A, Sentencing Table.  It cannot therefore be said that Green failed to secure Petitioner any

_____

[9] Petitioner seems to imply that he would have liked to inform the court about the alleged promises.  However, as explained above, Petitioner's allegations that he could rely on an unwritten oral promise from the Government are without merit.

advantage in pleading guilty to the two-count indictment in this case.[10]

> ### iv. Petitioner has failed to meaningfully demonstrate that but for Green's purported errors, he would have rejected the plea agreement and would have proceeded to trial.

Fourth, Petitioner fails to demonstrate in any meaningful way that but for Green's purported errors, he would not have pled guilty, but would have gone to trial. Had petitioner gone to trial and been convicted — which likely would have been the case given the Government's overwhelming evidence — he would have lost his guideline reduction for acceptance of responsibility and, as explained, his sentence would have likely increased considerably.[11]

In sum, Petitioner has presented nothing more than self-serving allegations of Green's ineffective assistance of counsel that are contradicted by both the record and by Petitioner's

---

[10] In his Reply, Petitioner asserts that Green was ineffective for failing to advise him that entering into a plea agreement would foreclose his ability to receive a sentence reduction related to his cooperation with Agent Kinghorn. (Doc. 51 at 4.) As described herein, however, the problem with Petitioner's claims is not the plea agreement he entered, but a multitude of other deficiencies described herein.

[11] According to the Factual Basis and PSR, Petitioner was apprehended with both a firearm and cocaine and, after being Mirandized, he made incriminating statements to law enforcement. (Factual Basis (Doc. 9); PSR ¶¶ 5-13.)

sworn statements at his Rule 11 hearing.  Green cannot be
constitutionally ineffective for failing to secure Petitioner
the benefit of non-existent or non-enforceable promises, nor can
he be faulted for counseling Petitioner to enter a plea in this
matter.  Petitioner has failed to demonstrate either prong of
<u>Strickland</u> here.

**B.    <u>Sentencing Counsel (Crump)</u>**

Petitioner next asserts that his sentencing counsel, Crump,
was ineffective. (Petitioner's Mem. (Doc. 33) at 5.) Petitioner
contends Crump made no efforts to assist Petitioner in
benefiting from cooperating with law enforcement.  (<u>Id.</u>)
Petitioner further faults counsel for failing to raise the issue
of cooperation at sentencing or in an objection to his PSR, so
that he might receive a "sentencing reduction."  (<u>Id.</u> at 5-6.)
Petitioner likewise faults Crump for failing to have Agent
Kinghorn testify at sentencing "regarding [Petitioner's]
assistance and to confirm the fact that he had promised
[Petitioner] a reduction in his sentence."  (<u>Id.</u> at 6.)
Finally, Petitioner contends that Crump was deficient for not
arguing on appeal that the Government breached its oral promise
and for not raising Green's purported ineffective assistance.
(<u>Id.</u>)

All these claims must fail.  First, as reflected in the
sentencing pleading filed on behalf of Petitioner, Crump did
make Petitioner's cooperation known to the court and he argued
that Petitioner should receive consideration for his
cooperation. Prior to sentencing Crump contended to the court
that:

> The defendant respectfully argues that a variant
> sentence is appropriate in his case below the
> sentencing guidelines due to the defendant's early
> cooperation with law enforcement, his written
> statement made on the date of his arrest admitting
> relevant offense conduct, and his debriefing with the
> investigating officers in case 1:09CR122-1.

(Doc. at 3.)  Consequently, Petitioner's claim that sentencing
counsel Crump "took no action to obtain [any] credit" for past
cooperation is without merit.  (Petitioner's Mem. (Doc. 33) at
5.)[12]

Second, at the sentencing hearing, counsel also argued
Petitioner's cooperation supported a variance from the guideline
calculation.  Counsel stated:  "what he would argue for the
variant sentence would be because he was such a cooperative

---

[12] In his Reply, Petitioner retreats somewhat from his
allegation that Crump took no action whatsoever on his behalf.
(Doc. 51 at 7.)  However, Petitioner also argues that Crump
failed to communicate with Agent Kinghorn and that Crump should
have advised the prosecutor and the court of the agent's
promise.  (Id. at 7-10.) Nevertheless, for all the reasons set
forth above, these claims fail.

person.  The – on the drugs . . . He's trying to come clean.  So

he tells them, you know, not only did I have this 4 kilograms, I

also sold another kilogram . . . He was debriefed.  He's talked

to officers."  (Tr. of Sentencing (Doc. 25) at 22.)

    The Assistant United States Attorney ("AUSA") was aware of

Petitioner's cooperation and agreed with defense counsel that

Petitioner should receive some consideration, albeit limited to

the low end of the applicable guideline.  The AUSA stated:

> I don't object to a low end sentence.  I don't object
> if the Court imposes the 87 months because [Petitioner]
> did come forward, and he made the statement at his
> arrest.

(Id. at 25.)

    Thus, while Petitioner did not receive the benefit of a

substantial assistance motion at sentencing, this court was made

aware of his cooperation and Petitioner did receive credit for

it from the Government.  Therefore, Petitioner's claim that

sentencing counsel failed to contend Petitioner was "due a

sentencing reduction" is without merit.  (Petitioner's Mem.

(Doc. 33) at 5.)

    Third, Petitioner's claim that counsel was defective for

failing to have Agent Kinghorn testify at sentencing also fails.

Crump, who argued that Petitioner should receive a lighter

sentence due to his cooperation, is entitled to considerable

deference in determining when and who to call as a witness.  See
United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004)
(concluding that counsel's decision not to call witness is
afforded "enormous deference") (citation omitted).
Additionally, as explained, Petitioner benefited from his
cooperation, which Crump raised at sentencing, because the
Government did not object to a low end of the guidelines
sentence.  As further explained, Petitioner has failed to
demonstrate in any meaningful way that there was a binding oral
promise made outside the plea agreement.

Fourth, Petitioner's assertion that Crump provided him with
ineffective assistance on appeal for failing to raise the
alleged promises on appeal must also fail.  Such claims are
judged using the Strickland test set out previously.  See
Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008).
Appellate counsel need not raise on appeal every non-frivolous
issue requested by a defendant.  Jones v. Barnes, 463 U.S. 745,
751 (1983); see also Smith v. Murray, 477 U.S. 527, 534 (1986);
Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989).  Winnowing
out weaker arguments to press forward with more important points
is part of effective appellate advocacy.  Jones, 463 U.S. at
751-52.  Prejudice can be shown by demonstrating that "'counsel

omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).  As explained, there is no reason to believe that the Government breached an enforceable oral promise or that Green, or Crump himself, provided Petitioner with ineffective assistance.  Because appellate counsel cannot be deficient for failing to raise meritless claims, this claim must also fail.

Last, as explained in greater detail above, Petitioner has failed to demonstrate both as to Green and as to Crump that but for their purported errors, he would not have pled guilty and instead would have gone to trial.  For all these reasons, Petitioner has failed meet either prong of Strickland as to his first two claims.

### Ground Three

Petitioner next alleges that Green failed to conduct adequate investigation before advising Petitioner to debrief and that Petitioner made unnecessary admissions that increased his sentence. (Motion to Vacate (Doc. 32) at 7.) Petitioner also alleges counsel failed to prepare Petitioner for the debriefings and failed to attend them.  (Id.)  Petitioner also asserts Green

lacked knowledge of the "scope of and facts surrounding the charged crimes." (Id.) This claim also fails for a number of reasons.

First, this claim is vague, conclusory, and entirely lacking in support. It therefore fails for this reason alone. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). Second, Petitioner fails to assert in any meaningful way that has not already been rejected herein how Green's (1) alleged lack of an investigation, (2) alleged failure to prepare him for debriefing, (3) alleged failure to accompany him to debriefing, and/or (4) alleged advice that Petitioner cooperate with law enforcement was in any way prejudicial. Third, Green has filed an affidavit, attached to the Government's response, which asserts that he did indeed investigate this case. (Am. Response, Attach. B (Doc. 47-2).)

Last, the only relevant fact specifically alleged in his § 2255 motion as to an unnecessary admission is that Petitioner apparently claims to have admitted to an additional kilogram of cocaine which increased the relevant conduct drug quantity and,

resultingly, his guideline calculation. (Petitioner's Mem. (Doc. 33) at 6.)   In support, Petitioner references a statement his counsel made at sentencing. (Tr. of Sentencing (Doc. 25) at 22) ("He's trying to come clean.  So he tells them, you know, not only did I have this 4 kilograms, I also sold another kilogram. So that puts him two levels up . . . .") Petitioner apparently contends that counsel rendered ineffective assistance by encouraging him to be truthful and, as a result, Petitioner admitted additional drug quantity.

This argument by Petitioner seriously misconstrues the record and improperly attempts to place responsibility for Petitioner's statement, provided immediately following arrest, on counsel.  As described in the PSR, Petitioner was arrested on February 12, 2009.  (PSR ¶¶ 5-9.)  On that same date, he provided a statement to law enforcement without the benefit of counsel, having been advised of his rights and waiving those rights.  (Id. ¶ 9.)  A copy of that statement is attached to the Government's Amended Response. (Am. Response, Attach. D (Doc. 47-4).)  In that statement, Petitioner told law enforcement officers that "in December 2008 near Christmas time, I brought one kilo of cocaine to NY to sell."  (Id. at 1.)  That kilogram

is the fifth kilogram addressed by counsel at the sentencing hearing.

Petitioner's efforts to obfuscate the record and blame counsel for Petitioner's statements provided to law enforcement prior to the time counsel was engaged merit no further discussion.  Any additional claim by Petitioner that Green advised him to tell the Government about some other unrelated crime, and that upon doing so he was prejudiced, must fail for being too vague, conclusory, and unsupported to proceed.  As noted, Green's advocacy helped Petitioner receive a guidelines reduction for acceptance of responsibility and the Government did not oppose a sentence at the low end of the guidelines. And, again, Petitioner has failed to demonstrate any likelihood that but for these perceived errors, he would have rejected the plea agreement and gone to trial.  Petitioner has failed to meet either prong of <u>Strickland</u> as to this claim.

### Ground Four

Petitioner's last ground for relief is based upon his contention that at sentencing Crump was ineffective for not objecting to an "easily disprovable fact."  (Motion to Vacate (Doc. 32) at 8.)  Petitioner contends that this error ultimately resulted in his receiving a sentence higher than he would have

otherwise received but for the error.  (Id. at 18.)  The "easily disprovable fact" arose from a written statement prepared by law enforcement, reviewed and signed by Petitioner.  (Am. Response, Attach. D (Doc. 47-4).)  In the statement, it appears that one sentence describes a "source of supply known to me as Marco . . . Marco has a cousin . . . ." (Id. at 1-2.)  The PSR subsequently indicated that Petitioner's source of supply was his cousin, Marco.  (PSR ¶ 9.)

Petitioner essentially asserts that this allegedly erroneous factual determination that he had a cousin who supplied him drugs led to a determination by this court that a downward sentencing variance was not appropriate.  In support, Petitioner points to a statement the court made at sentencing that Petitioner "involved himself in criminal conduct, whether it was because of family circumstances or whether it was because of other relationships, he was able to jump squarely into some very serious criminal conduct, and I find in these cases that a guideline range -- a sentence within the guideline range is sufficient, but not greater than necessary."  (Tr. of Sentencing (Doc. 25) at 29-30.)

This court's comment does not support Petitioner's conclusion that any error as to whether his cousin was his drug

supplier somehow prejudiced him.  As should be clear from the
very quote upon which Petitioner relies, the court was
indicating that it did not matter to this court how he became
involved in the criminal conduct, because the conduct itself was
very serious.  Ultimately, whether Petitioner was involved in
drug distribution through his cousin or someone else, his
involvement in a four-kilogram transaction with someone who had
access to ten kilograms reflected very serious criminal conduct
on his part.  Any failure by counsel to object to information
contained in the PSR was harmless.  Petitioner has failed meet
either prong of Strickland as to this claim.

### CONCLUSION

For the reasons set forth above, all Petitioner's claims
lack merit, his 2255 motion and his motion for default judgment
should be denied, and this matter should be dismissed.  An
evidentiary hearing is unwarranted in this matter.

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate,
Set Aside, or Correct Sentence (Doc. 32) is **DENIED** and that this
action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Default
Judgment (Doc. 49) is **DENIED.**

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 3rd day of November, 2014.

_____
United States District Judge